## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| S.M.R INNOVATIONS LTD and Y.M.R TECH LTD,<br><br>     Plaintiffs,<br><br>     v.<br><br>LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC.,<br><br>     Defendants. | Civil Action No. 6:21-cv-386<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs S.M.R Innovations LTD and Y.M.R Tech LTD (collectively, "Plaintiffs") state for their Complaint against LG Electronics, Inc. and LG Electronics U.S.A., Inc. as follows:

## INTRODUCTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

## PARTIES

2.      Plaintiff S.M.R Innovations LTD is a limited liability company organized and existing under the laws of Israel. Oded Shmueli, an inventor on the

patents asserted herein, wholly owns S.M.R Innovations LTD.

3.      Plaintiff Y.M.R Tech LTD is a limited liability company organized and existing under the laws of Israel. Benny Yehezkel, an inventor on the patents asserted herein, wholly owns Y.M.R Tech LTD.

4.      On information and belief, Defendant LG Electronics, Inc. ("LGEKR") is a corporation organized under the laws of the Republic of Korea, having a principal place of business listed at LG Twin Towers, 128 Yeoui-daero, Yeongdeungpo-gu, Seoul, Republic of Korea.

5.      On information and belief, Defendant LG Electronics U.S.A., Inc. ("LGEUS" or, collectively with LGEKR, "LG" or "Defendants") is a corporation organized and existing under the laws of Delaware that maintains an established place of business at 9420 Research Blvd, Austin, Texas 78759. LGEUS is registered for the right to transact business in Texas and has been since 1984. On information and belief, LGEUS has employees who work in the State of Texas and in this Judicial District.

6.      Defendant LGEUS distributes wireless mobile communication devices to customers throughout the United States. On information and belief, LGEUS imports such wireless communication devices and televisions from its parent corporation LGEKR in South Korea, where they are designed and made.

2

7.      On information and belief, LGEUS is a wholly owned subsidiary of LGEKR and is responsible for domestic sales and distribution of LGEKR's consumer electronics products, including the accused products in this case.

8.      Defendants do business in Texas, directly or through intermediaries and offer products or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in this Judicial District.

## JURISDICTION

9.       This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271, *et seq.*

10.     Defendants are subject to personal jurisdiction in the State of Texas and in this Judicial District.

11.     Venue is proper in this Judicial District and division pursuant to 28 U.S.C. § 1331, § 1338(a), §§ 1391(b) & (c), and § 1400(b).

12.     Defendant LGEKR is a foreign corporation that may be sued in this Judicial District pursuant to 28 U.S.C. § 1391(c)(3).

13.   Venue for this suit is proper in this Judicial District with respect to

LGEUS pursuant to 28 U.S.C. § 1400(b). LGEUS is registered to do business in

Texas and maintains an agent for service of process in Texas. LGEUS maintains a

place of business within the Western District of Texas. LGEUS has also committed

acts of infringement in this Judicial District.

14.   On information and belief, Defendants have sold and offered for sale

accused products to residents of this Judicial District, including, without limitation,

through their website at www.lg.com/us.

15.   Defendants also have authorized retailers that offer and sell accused

products on their behalf in this Judicial District. These include, for example, Target

stores, including those located at, for example, 5401 Bosque Blvd, Waco, TX

76710; 901 E. 5th Ste 140, Austin, Texas 78702; 5621 N I H 35, Austin, Texas

78723; 4522 Fredericksburg Rd, Balconess Heights, TX 78201; and 746 NW Loop

410, San Antonio, TX 78216, and Best Buy stores, including those located at, for

example, 4627 S Jack Kultgen Expy, Waco, TX 76706; 3550 S General Bruce Dr.,

Temple, TX 76504; 3209 E. Central Texas Expy., Killeen, TX 76543; 125 NW

Loop 410, San Antonio, TX 78216; 6001 NW Loop 410, San Antonio, TX 78238,

2003 N Loop 1604 E, San Antonio, TX 78232; 12909 Shops Pkwy, Bee Cave, TX

78738; and 9600 S Interstate 35, Austin, TX 78748.

4

16.     Plaintiffs' cause of action arises directly from Defendants' business contacts and other activities in the State of Texas and this District.

17.     Defendants have derived substantial revenues from their infringing acts occurring within the State of Texas and within this District.

18.     This Court has personal jurisdiction over LGEUS at least because it maintains an established place of business in this District.

19.     This Court also has personal jurisdiction over Defendants under the provisions of the Texas Long Arm Statute and consistent with Constitutional due process by virtue of the fact that, upon information and belief, Defendants have availed themselves of the privilege of conducting and soliciting business within this State, including engaging in at least some of the infringing activities in this State, as well as by others acting as Defendants' agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution and without offending traditional notions of fair play and substantial justice.

20.     On information and belief, Defendants have also established minimum contacts with this Judicial District and regularly transact and do business within this District, including advertising, promoting and selling products over the Internet, through intermediaries, representatives and/or agents located within this

District, that infringe Plaintiffs' patents, which products are then sold and/or shipped directly to citizens residing within this State and in this District. Upon further information and belief, Defendants have purposefully directed activities at citizens of this State, including those located within this Judicial District.

21.     On information and belief, Defendants have also purposefully and voluntarily placed their products into the stream of commerce with the expectation that they will be purchased and used by customers located in the State of Texas. On information and belief, Defendants' customers in the State of Texas have purchased and used and continue to purchase and use Defendants' products.

22.     Furthermore, this Court has personal jurisdiction over Defendants under the Long Arm Statute of the State of Texas because: (i) Defendants have and continue to intentionally sell products and methods to customers in Texas; (ii) Defendants have and continue to intentionally instruct customers and potential customers in Texas with respect to how to use the products and methods that Defendants sell to customers in Texas; (iii) Defendants know and have known their products and methods, including the infringing products and methods, have and continue to be sold and marketed in Texas through regular and established distribution channels; (iv) Defendants know and have known their products and methods will enter the United States of America and the State of Texas; (v)

6

Defendants have and continue to target customers and potential customers in Texas to buy and/or use Defendants' products and methods, including the infringing products and methods; (vi) Defendants have and continue to provide advice to customers in Texas; (vii) it has been and continues to be foreseeable that Defendants' products and methods, including the infringing products and methods, would enter the State of Texas; (viii) Defendants have and continue to market to citizens of Texas through their website https://www.lg.com/us; (ix) Defendants have and continue to provide services to citizens of Texas through their website; (x) Defendants derive substantial revenue from Texas; (xi) Texas has and continues to be part of Defendants' established distribution channels; (xii) the assertion of personal jurisdiction over Defendants is reasonable and fair; and (xiii) the State of Texas has an interest in this matter due to the presence of LGEUS within this State, as well as the presence of Defendants' infringing products in the State of Texas.

23.     This Court also has personal jurisdiction over Defendants because: (i) Defendants maintain regular and systematic business contacts with the State of Texas and within this District; (ii) Defendants purposely, regularly, and continuously conduct business in the State of Texas and within this District; (iii) Defendants purposefully direct their activities at residents of the State of Texas; (iv) the causes of action set forth herein arise out of or relate to Defendants' activities in the State of

Texas; and (v) the exercise of jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

## The Inventors of the Patents-in-Suit

24.     Oded Shmueli, one of the named inventors on the patents-in-suit, is a Professor of Computer Science at the Technion University in Haifa, Israel. He graduated from Brandeis University and received his Ph.D. in Applied Mathematics from Harvard University in 1981.

25.     Professor Shmueli has held positions at several leading industrial research laboratories, including IBM Research, AT&T Bell Labs, and MCC. He was also a consultant for HP Laboratories over a five-year period.

26.     He was a co-founder and CTO of Dealigence, a start-up company in the electronic commerce domain. He has been named as an inventor on 48 issued U.S. patents. From 2006-2008, he served as the Dean of the Computer Science Faculty at the Technion University and from 2008-2014 as the Executive Vice President for Research and the Managing Director of the Technion Research and Development Foundation Ltd. His research interests include theoretical and practical aspects of database systems, topics on which he has published widely.

27.     Benny Yehezkel, another inventor of the patents-in-suit, is an experienced executive in the technology industry.

28.     Mr. Yehezkel holds a degree in Computer Science from the Technion University and an MBA from the Tel Aviv University.

29.     During the last eighteen years, Mr. Yehezkel has served as CEO of RadCloud, a start-up company in the public cloud domain; co-founder and CEO of MyPensya Ltd., a start-up company in the fintech domain; Executive Vice President of Quantum Telecom; CEO of Dealigence, a start-up company in the electronic commerce domain; and Executive Vice President of ECtel and CEO of Elron Telesoft (which was acquired by ECtel). Both ECtel and Elron Telesoft engaged in developing and marketing revenue-assurance and fraud-detection systems.

**Plaintiffs' U.S. Patent No. 9,699,223**

30.     On July 25, 2002, Oded Shmueli and Benny Yehezkel filed U.S. Provisional Patent Application No. 60/398,077 ("the '077 provisional application").

31.     On January 21, 2003, Mr. Shmueli and Mr. Yehezkel filed U.S. Patent Application No. 10/347,388 ("the '388 application").

32.     On July 4, 2017, the United States Patent and Trademark Office duly and legally issued United States Patent No. 9,699,223 ("the '223 patent"), entitled "Routing of Data Including Multimedia Between Electronic Devices." A true and

correct copy of the '223 patent is attached hereto as Exhibit A.

33.     The '223 patent claims priority to the '388 application and the '077 provisional application.

34.     S.M.R Innovations and Y.M.R Tech are the owners, by assignment, of all right, title, and interest in and to the '223 patent, including the right to bring suit for past, present, and future patent infringement, and to collect past, present, and future damages.

## No Claim of the '223 patent is Abstract

35.     The claims of the '223 patent are focused on an advance over the prior art such that their character as a whole is not directed to excluded subject matter, such as an abstract idea, or any other subject matter excluded under 35 U.S.C. §101.

36.     The Patent Office determined that the combinations claimed in the claims of the '223 patent are novel and nonobvious.

37.     The '223 patent solves real-world, technological problems, including, for example, providing solutions allowing the beneficial routing of information (e.g., multi-media content) between electronic devices. The '223 patent discloses and claims benefits that were unknown in the art prior to the '223 patent. The '223 patent also discloses and claims technological solutions improving the manner and

10

quality in which such information is delivered to consumers or consumed by them.

38.     The '223 patent recognized that, as of its priority date, telecommunications technology was transforming society: "With the introduction of mobile communication devices, telecommunications technology has transformed society over the past decade. The ability to communicate almost anywhere, anytime, with few geographical limitations has resulted in a society, in both social and business contexts, which is almost always on-line. Mobile communication devices today typically have data processing ability which allows them to handle multi-media, and different types of devices are today able to communicate with each other, either directly via a permanent or temporary link or indirectly via a network." '223 patent at 1:28-38.

39.     But the '223 patent also recognized that many limitations in the relevant technology remained as of the '223 patent's priority date: "However, in general, the playing of multimedia data is limited, at least in the short term, to the device on which it is received, or to those in which the data originates. This limitation can be a considerable limitation on the user's ability to enjoy the multimedia since different devices have very different capabilities regarding the playing of multimedia. The media playing devices considered specifically in the present disclosure include both mobile devices (cell phones, PDA's, handheld

devices, etc.) and non-mobile devices (land/fixed line phones, computer monitors, Hi-Fi sets, speakers, etc.). Some of the devices may be used for just one or two media types and others are more general in their applicability, which is to say it is possible to use the devices in different modes for playing several media types: voice, text, images, and video. Likewise, the devices are used in various locations: at the office, home, car, hotel room, plane, outdoors, etc." *Id.* at 1:42-59.

40.     The '223 patent recognized that these problems require a solution: "[I]t would be highly advantageous to provide the user with the ability to select a target device, based on the type of multimedia content, and furthermore to choose a device for play or storage of the content independently of the initially targeted or originating device." *Id.* at 1:23-28.

41.     The '223 patent recognized that these problems required a technical solution and, to that end, discloses a data rerouting apparatus: *"*According to a first aspect of the present invention there is thus provided data rerouting apparatus for association with electronic equipment for rerouting data." *Id.* at 2:32-34.

42.     The disclosed solution provides functionality for monitoring the environment: "an announcer device for indicating to surrounding equipment that said associated equipment is available for rerouting, thereby to enable receipt of rerouted data therefrom" and "a scout device for scanning surroundings of said

associated equipment to find out about compatible equipment in the vicinity, thereby to reroute data thereto." *Id.* at 2:35-40.

43.    The disclosed solution allows a user to choose where to route data without directly interacting with the targeted device: "The apparatus preferably further comprises a user interface associated with said scout device for allowing a user to select between available compatible equipment to reroute data thereto." *Id.* at 2:41-44.

44.    The '223 patent also discloses the following: "In addition, rerouting may be indirect. Indirect non-local routing relies on external service provider services, network and infrastructure. Indirect routing still requires the device initially receiving the communication to detect available receiving devices and determine their capability and availability and also requires potential rerouting recipients to announce their capabilities to the environment." *Id.* at 9:18-24.

45.    The '223 patent discloses the ability to move multimedia streams to the device most suited for utilization in a dynamic and efficient fashion (e.g., causing a routing from a smaller screen (e.g., a smartphone) to a large television screen and associated sound system). *Id.* at 4:21-41, 1:60-67, 2:17-28.

46.    The '223 patent discloses the ability to accept a call on one device even though it was directed to another device. *Id.* at 5:52-61. Using the solution

disclosed in the '223 patent, for example, someone can route a call directed to his or her smartphone to a nearby computer or watch that is wirelessly linked with the smartphone.

47.     Today, operating via a smartphone, someone can instruct other available devices (such as a TV screen) to play a desired movie. If no such screen and sound system is available, one may continue watching on a personal device such as a smartphone. The content can be obtained from the smartphone via the LAN or received via WAN. This solution is disclosed in the patent. *Id.* at 10:10-41. Prior to the invention, one could not receive a movie on a smartphone, let alone route the movie to a television.

48.     These technological innovations provide various benefits, including a larger range of operating capabilities with increased efficiency: "The capability of routing of multi-media content (possibly including media transformation and multiplication, i.e. cloning) from one device to another may dramatically upgrade media playing quality, and grant the user the liberty to play the content on any device he wishes, preferably the most suitable device available, regardless of the origin of the content or the device to which the content may initially have been directed, or at which the content originates. Furthermore, by rerouting to a more capable device, a user's satisfaction level may be increased in comparison to

14

having to remain with a device that say is limited by inferior data rate, processing power, memory capacity or input/output facilities. … [and] permits a range of possibilities for use which is currently not provided for." *Id.* at 4:21-41.

49.     The solutions disclosed and claimed in the '223 patent are utilized in modern devices, including as exemplified in detail in the claim charts attached as Exhibit C, Exhibit D, Exhibit E, and Exhibit F.

50.     The claims of the '223 patent recite features that address the technical problems and challenges in the art, thereby providing specific technological solutions that improved the state of the art by providing, for example, new and improved ways for users to manage and consume multimedia content. Thus, the claims are not directed to an abstract concept.

### The Inventions Claimed In the '223 Patent Were Not Well-Understood, Routine, Or Conventional

51.     The inventions claimed in the '223 patent were not well-understood, routine, or conventional as of the priority date of the '223 patent, but instead claim specific, novel, and nonobvious improvements to the prior art.

52.     The claims of the '223 patent do not preempt all systems and methods for routing a media data stream.

53.     The '223 patent is compliant with 35 U.S.C. § 101.

54.     The '223 patent is compliant with 35 U.S.C. § 102.

55.    The '223 patent is compliant with 35 U.S.C. § 103.

56.    The '223 patent is compliant with 35 U.S.C. § 112.

57.    The '223 patent is presumed valid and enforceable in accordance with 35 U.S.C. § 282.

58.    Plaintiffs provided Defendants with notice of their infringement of the '223 patent prior to filing suit and offered to seek resolution without the need for litigation, but to Plaintiffs' knowledge, Defendants have not responded.

## Plaintiffs' U.S. Patent No. 10,547,648

59.    On January 28, 2020, the United States Patent and Trademark Office duly and legally issued United States Patent No. 10,547,648 ("the '648 patent"), entitled "Routing of Data Including Multimedia Between Electronic Devices." A true and correct copy of the '648 patent is attached hereto as Exhibit B.

60.    The '648 patent claims priority to the '388 application and the '077 provisional application.

61.    S.M.R Innovations and Y.M.R Tech are the owners, by assignment, of all right, title, and interest in and to the '648 patent, including the right to bring suit for past, present, and future patent infringement, and to collect past, present, and future damages.

## No Claim of the '648 patent is Abstract

62.    The claims of the '648 patent are focused on advances over the prior art such that their character as a whole is not directed to excluded subject matter, such as an abstract idea, or any other subject matter excluded under 35 U.S.C. §101.

63.    In fact, the Patent Office determined that the combinations claimed in the claims of the '648 patent are novel and nonobvious.

64.    The '648 patent solves real-world, technological problems, including, for example, providing solutions allowing the beneficial routing of information (e.g., multi-media content) between electronic devices. The '648 patent discloses and claims benefits that were unknown in the art prior to the '648 patent. The '648 patent also discloses and claims technological solutions improving the manner and quality in which such information is delivered to consumers or consumed by them.

65.    The '648 patent recognized that, as of its priority date, telecommunications technology was transforming society: "With the introduction of mobile communication devices, telecommunications technology has transformed society over the past decade. The ability to communicate almost anywhere, anytime, with few geographical limitations has resulted in a society, in both social and business contexts, which is almost always on-line. Mobile communication devices today typically have data processing ability which allows

them to handle multi-media, and different types of devices are today able to
communicate with each other, either directly via a permanent or temporary link or
indirectly via a network." '648 patent at 1:30-41.

66.     But the '648 patent also recognized that many limitations in the
relevant technology remained as of the '648 patent's priority date: "However, in
general, the playing of multimedia data is limited, at least in the short term, to the
device on which it is received, or to those in which the data originates. This
limitation can be a considerable limitation on the user's ability to enjoy the
multimedia since different devices have very different capabilities regarding the
playing of multimedia. The media playing devices considered specifically in the
present disclosure include both mobile devices (cell phones, PDA's, handheld
devices, etc.) and non-mobile devices (land/fixed line phones, computer monitors,
Hi-Fi sets, speakers, etc.). Some of the devices may be used for just one or two
media types and others are more general in their applicability, which is to say it is
possible to use the devices in different modes for playing several media types:
voice, text, images, and video. Likewise, the devices are used in various locations:
at the office, home, car, hotel room, plane, outdoors, etc." *Id.* at 1:45-62.

67.     The '648 patent recognized that these problems require a solution:
"[I]t would be highly advantageous to provide the user with the ability to select a

18

target device, based on the type of multimedia content, and furthermore to choose a device for play or storage of the content independently of the initially targeted or originating device." *Id.* at 2:28-33.

68.     The disclosed solution provides functionality for informing about media availability in another device:

> Another (optional) function of the announcer 30 is that of informing the environment, typically a user, that media content has been routed to it and is now usable (for example, to announce that a rerouted call is now available on this telephone). The latter kind of announcement, that is to say to persons rather than to electronic equipment, may typically comprise light flashes, rings, a loudspeaker sound or even a smell.

*Id.* at 7:45-52.

69.     The disclosed solution also provides functionality for informing a device about an incoming call at another device: "The nearby phone rings, or flashes to indicate the rerouted call." '648 patent at 11:66-12:8.

70.     The '648 patent also recognized that the shortcomings in the art required a technical solution and, to that end, discloses a data rerouting apparatus: "According to a first aspect of the present invention there is thus provided data rerouting apparatus for association with electronic equipment for rerouting data." *Id.* at 2:36-38.

71.     The disclosed solution provides functionality for monitoring the environment: "an announcer device for indicating to surrounding equipment that

19

said associated equipment is available for rerouting, thereby to enable receipt of

rerouted data therefrom" and "a scout device for scanning surroundings of said

associated equipment to find out about compatible equipment in the vicinity,

thereby to reroute data thereto." *Id.* at 2:40-45.

72.    The disclosed solution allows a user to choose where to route data

without directly interacting with the targeted device: "The apparatus preferably

further comprises a user interface associated with said scout device for allowing a

user to select between available compatible equipment to reroute data thereto." *Id.*

at 2:46-49.

73.    The '648 patent also discloses that routing may be performed

automatically based on, for example, stored profiles: "In many situations, as briefly

described in previous examples, certain apparatus activities may be initiated via

user interaction, and preferred ways of enabling user interaction comprise

displaying menus, or using voice menus, or conceivably even using feel or smell

menus. Certain actions are preferably taken automatically, that is to say without

user interaction. Such automation may be based on profiles, terms, and conditions.

Conditions may for example be associated with the device that performs the

routing, as well as with a device to which media is routed. Profiles may be stored

with the modification apparatus of FIG. 2 or obtained from remote sources." *Id.* at

8:40-52.

74.     The '648 patent also discloses indirect routing: "In addition, rerouting may be indirect. Indirect non-local routing relies on external service provider services, network and infrastructure. Indirect routing still requires the device initially receiving the communication to detect available receiving devices and determine their capability and availability and also requires potential rerouting recipients to announce their capabilities to the environment." *Id.* at 9:25-31.

75.     The '648 patent discloses the ability to move multimedia streams to the device most suited for utilization in a dynamic and efficient fashion (e.g., causing a routing from a smaller screen (e.g., a smartphone) to a large television screen and associated sound system). *Id.* at 4:26-46, 1:63-2:3, 2:21-32.

76.      The '648 patent discloses the ability to accept a call on one device even though it was directed to another device. *Id.* at 5:57-66.

77.     Using the solution disclosed in the '648 patent, for example, someone can route a call directed to his or her smartphone to a nearby computer or watch that is wirelessly linked with the smartphone. Using the solution disclosed in the '648 patent, one can also be prompted by, for example, a watch that there is an incoming call via an associated smartphone. Prior to the invention, one would either miss the call or run to the smartphone to accept it, usually arriving just as the

call disconnected. This solution utilized by modern devices is disclosed in the '648 patent.

78.     These technological innovations provide various benefits, including a larger range of operating capabilities with increased efficiency: "The capability of routing of multi-media content (possibly including media transformation and multiplication, i.e. cloning) from one device to another may dramatically upgrade media playing quality, and grant the user the liberty to play the content on any device he wishes, preferably the most suitable device available, regardless of the origin of the content or the device to which the content may initially have been directed, or at which the content originates. Furthermore, by rerouting to a more capable device, a user's satisfaction level may be increased in comparison to having to remain with a device that say is limited by inferior data rate, processing power, memory capacity or input/output facilities. … [and] permits a range of possibilities for use which is currently not provided for." *Id.* at 4:26-46.

79.     The '648 patent expressly describes various benefits associated with routing phone calls: "For example, the ability to route an incoming phone call, typically comprising voice, from a mobile device to a land/fixed line phone may generally be expected to upgrade the quality of the call. The ability to route hand held calendar content from a mobile device having some digital ability to a

computer monitor, may allow for better viewing of the information. Such rerouting may also enhance the user's ability to share the information with other people or with computer applications, for example applications that capture information displayed on the monitor and use it to trigger other events. Such applications can easily be run on a PC or laptop computer but are difficult to run on a mobile telephone for example." *Id.* at 4:47-59.

80.     The solutions disclosed and claimed in the '648 patent are utilized in modern devices, including as exemplified in detail in the claim charts attached as Exhibit G and Exhibit H.

81.     The claims of the '648 patent recite features that address the technical problems and challenges in the art, thereby providing specific technological solutions that improved the state of the art by providing, for example, new and improved ways for users to manage and consume multimedia content. Thus, the claims are not directed to an abstract concept.

### The Inventions Claimed In the '648 Patent Were Not Well-Understood, Routine, Or Conventional

82.     The inventions claimed in the '648 patent were not well-understood, routine, or conventional as of the priority date of the '648 patent, but instead claim specific, novel, and nonobvious improvements to the prior art.

83.     The claims of the '648 patent do not preempt all systems and methods

23

for informing a device about an availability of media content.

84.    The '648 patent is compliant with 35 U.S.C. § 101.

85.    The '648 patent is compliant with 35 U.S.C. § 102.

86.    The '648 patent is compliant with 35 U.S.C. § 103.

87.    The '648 patent is compliant with 35 U.S.C. § 112.

88.    The '648 patent is presumed valid and enforceable in accordance with 35 U.S.C. § 282.

89.    Plaintiffs provided Defendants with notice of their infringement of the '648 patent prior to filing suit and offered to seek resolution without the need for litigation, but to Plaintiffs' knowledge, Defendants have not responded.

## COUNT ONE: DIRECT INFRINGEMENT OF THE '223 PATENT

90.    Plaintiffs reallege and incorporate herein the preceding allegations of this Complaint as if fully set forth herein.

91.    Defendants have in the past and continue to infringe one or more claims of the '223 patent, including at least claims 14 and 22, in violation of 35 U.S.C. §§ 271(a) by making, using, offering to sell, or selling the patented invention within the United States or importing the patented invention into the United States.

92.    A representative example of Defendants' infringing apparatuses,

methods, and systems includes (but is not limited to) Defendants' LG G7 ThinQ smartphone and other G and V series smartphones, among others. Representative claim charts demonstrating Defendants' infringement of the '223 patent, either literally or under the doctrine of equivalents, are attached as Exhibit C, Exhibit D, Exhibit E, and Exhibit F. Defendants' infringing products include, without limitation, other LG smartphones providing functionality such as that shown in The representative charts ("Accused Products").

93.     Plaintiffs have and continue to suffer damages as a direct and proximate result of Defendants' direct infringement of the '223 patent and will suffer additional and irreparable damages unless Defendants are permanently enjoined by this Court from continuing their infringement. Plaintiffs have no adequate remedy at law.

94.     Plaintiffs are entitled to: (i) damages adequate to compensate them for Defendants' direct infringement of the '223 patent, which amounts to, at a minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) an injunction.

## COUNT TWO: INDIRECT INFRINGEMENT OF THE '223 PATENT

95.     Plaintiffs reallege and incorporate herein the preceding allegations of this Complaint as if fully set forth herein.

96.     Defendants have in the past and continue to indirectly infringe at least claims 1, 14, and 22 of the '223 patent in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing direct infringement by other persons, including customers and end users, by offering for sale and/or selling Defendants' Accused Products in the United States and instructing on their infringing use without authority or license from Plaintiffs and in a manner understood and intended to infringe the '223 patent.

97.     Defendants have in the past and continue to indirectly infringe at least claims 1, 14, and 22 of the '223 patent in violation of 35 U.S.C. § 271(c) by actively, knowingly, and intentionally contributing to direct infringement by other persons, including customers and end users, by offering for sale and/or selling Defendants' Accused Products (including smartphones, tablets, and other devices, such as televisions, specially adapted to receive content routed from other devices like smartphones in an infringing manner and having no substantial noninfringing use) in the United States without authority or license from Plaintiffs and in a manner understood and intended to infringe the '223 patent.

98.     Representative claim charts demonstrating Defendants' infringement of the '223 patent, either literally or under the doctrine of equivalents, are attached as Exhibit C, Exhibit D, Exhibit E, and Exhibit F. Defendants' Accused Products

include, without limitation, other LG products providing functionality such as that shown in the representative charts.

99.    Plaintiffs provided Defendants notice of their infringement of the '223 patent by letters dated March 4, 2021, and April 19, 2021. Defendants received these notices prior to the filing of this Complaint.

100.    Plaintiffs have and continue to suffer damages as a direct and proximate result of Defendants inducing infringing and Defendants' contributory infringement of the '223 patent and will suffer additional and irreparable damages unless Defendants are permanently enjoined by this Court from continuing their infringement. Plaintiffs have no adequate remedy at law.

101.    Plaintiffs are entitled to: (i) damages adequate to compensate them for Defendants inducing infringement and Defendants' contributory infringement of the '223 patent, which amounts to, at a minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) an injunction.

## COUNT THREE: DIRECT INFRINGEMENT OF THE '648 PATENT

102.    Plaintiffs reallege and incorporate herein the preceding allegations of this Complaint as if fully set forth herein.

103.    Defendants have in the past and continue to infringe one or more claims of the '648 patent, including at least claim 15, in violation of 35 U.S.C. §§

271(a) by making, using, offering to sell, or selling the patented invention within the United States or importing the patented invention into the United States.

104.   Representative examples of Defendants' infringing apparatuses, methods, and systems include (but are not limited to) Defendants' LG V30 smartphone and other G and V series smartphones, among others. Representative claim charts demonstrating Defendants' infringement of the '648 patent, either literally or under the doctrine of equivalents, are attached as Exhibit G and Exhibit H. Defendants' Accused Products include, without limitation, other LG smartphones and smartwatches providing functionality such as that shown in the representative charts.

105.   Plaintiffs have and continue to suffer damages as a direct and proximate result of Defendants' direct infringement of the '648 patent and will suffer additional and irreparable damages unless Defendants are permanently enjoined by this Court from continuing their infringement. Plaintiffs have no adequate remedy at law.

106.   Plaintiffs are entitled to: (i) damages adequate to compensate them for Defendants' direct infringement of the '648 patent, which amounts to, at a minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) an injunction.

## COUNT FOUR: INDIRECT INFRINGEMENT OF THE '648 PATENT

107.   Plaintiffs reallege and incorporate herein the preceding allegations of this Complaint as if fully set forth herein.

108.   LGEUS has in the past and continues to indirectly infringe at least claim 1 of the '648 patent in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing direct infringement by other persons, including customers and end users, by offering for sale and/or selling Defendants' Accused Products in the United States and instructing on their infringing use without authority or license from Plaintiffs and in a manner understood and intended to infringe the '648 patent.

109.   Representative claim charts demonstrating Defendants' infringement of the '648 patent, either literally or under the doctrine of equivalents, are attached as Exhibit G and Exhibit H.

110.   Plaintiffs provided Defendants notice of their infringement of the '648 patent by letters dated March 4, 2021, and April 19, 2021. Defendants received these notices prior to the filing of this Complaint. Plaintiffs again provided LGEUS notice of its infringement by letter dated April 20, 2021. LGEUS received this notice prior to the filing of this Complaint.

111.   Plaintiffs have and continue to suffer damages as a direct and

proximate result of LGEUS inducing infringement of the '648 patent and will

suffer additional and irreparable damages unless LGEUS is permanently enjoined

by this Court from continuing its infringement. Plaintiffs have no adequate remedy

at law.

112.   Plaintiffs are entitled to: (i) damages adequate to compensate them for

LGEUS inducing infringement of the '648 patent, which amounts to, at a

minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) an

injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

a.      Declaring that Defendants have infringed the '223 patent and the '648

patent;

b.      That Defendants be enjoined from further infringement of the '223

patent and the '648 patent pursuant to 35 U.S.C. § 283;

c.      That Defendants be ordered to pay damages adequate to compensate

Plaintiffs for their infringement of the '223 patent and the '648 patent pursuant to

35 U.S.C. § 284;

d.      That Defendants be ordered to pay prejudgment interest pursuant to

35 U.S.C. § 284;

e.     That Defendants be ordered to pay all costs associated with this action

pursuant to 35 U.S.C. § 284;

f.     That Defendants be ordered to pay Plaintiffs' attorneys' fees pursuant

to 35 U.S.C. § 285; and

g.     That Plaintiffs be granted such other and additional relief as the Court

deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all

issues so triable.

This 21st day of April, 2021.

                         Respectfully submitted,


                         */s/ Cortney S. Alexander*
                         Cortney S. Alexander
                         Telephone: 404-855-3867
                         Email:
                         cortneyalexander@kentrisley.com

                         Daniel A. Kent
                         (pro hac vice to be submitted)
                         Telephone: 404-585-4214
                         Email: dankent@kentrisley.com

                         KENT & RISLEY LLC
                         5755 North Point Parkway
                         Suite 57
                         Alpharetta, Georgia 30022

31

Attorneys for Plaintiffs